UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STACY P.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:17-cv-06050-TLF

ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff appeals the Commissioner's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the Commissioner's decision is affirmed.

PROCEDURAL BACKGROUND

Plaintiff applied for disability benefits. Dkt. 13, Administrative Record ("AR") 18. She alleges she became disabled as of November 30, 2010. *Id.* The Commissioner denied her applications on initial administrative review and on reconsideration. *Id.* Following a hearing, an administrative law judge ("ALJ") found plaintiff to be not disabled. AR 45-56. Plaintiff appealed that decision, and the Social Security Administration Appeals Council vacated the ALJ's

ORDER AFFIRMING THE COMMISSIONER'S DECISION
TO DENY BENEFITS - 1

decision and remanded the case. AR 62. A second hearing was held before the ALJ. AR 443-85. The ALJ again found plaintiff to be not disabled. AR 18-31. Plaintiff appeals that decision, seeking reversal and remand for further administrative proceedings.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless it is: (1) based on legal error; or (2) not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The ALJ is responsible for determining credibility and resolving any conflicts or ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). When evidence is sufficient to support more than one outcome, the Court upholds the ALJ's decision. *Trevizo*, 871 F.3d at 674-75; *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and evidence that does not support the ALJ's conclusion. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court may not affirm the ALJ's decision for a reason upon which the ALJ did not rely. *Id.* at 1010. Only the reasons the ALJ identifies are considered in the scope of the Court's review. *Id.*

## ISSUES FOR REVEW

1. Whether the ALJ was required to further develop the record.

2. Whether the ALJ erred in evaluating the medical evidence.

3. Whether the ALJ erred in discounting plaintiff's testimony about her symptoms and limitations.

4. Whether the ALJ erred in discounting a lay witness statement from plaintiff's friend.

5. Whether any of the above alleged errors resulted in an erroneous residual functional capacity (RFC) determination.

## DISCUSSION

The Commissioner employs a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step five of that process, the ALJ assesses the claimant's residual functional capacity (RFC) to determine whether he or she can make an adjustment to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). It is the ALJ's burden to show the claimant can perform jobs that exist "in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); 20 C.F.R. §§ 404.1520(e), 416.920(e).

RFC is the maximum amount of work a claimant can do based on the relevant evidence in the record. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2.

In this case the ALJ determined that plaintiff had the RFC to perform a modified range of sedentary work with additional mental, postural, and environmental limitations. AR 22. Based on the vocational expert's testimony that an individual with the same RFC as plaintiff—and the same age, education, and work experience—could perform jobs existing in significant numbers

in the national economy, the ALJ determined that she was not disabled at step five. AR 29-30.

A. <u>Developing the Record</u>

Plaintiff contends the ALJ erred by failing to develop the record. She asserts that the ALJ's failure to obtain a mental consultative evaluation "tainted the ALJ's step two finding that [plaintiff] has no severe mental impairment." Dkt. 16, p. 3.

A claimant has the burden to provide evidence of disability. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."); 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled."). An ALJ hearing is not adversarial in nature and "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983).

Nonetheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). If a consultative evaluation is necessary to enable an ALJ to make a disability determination, then failure to do so is reversible error. *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001).

Plaintiff asserts that the record does not include a complete physical or mental evaluation from a treating or examining physician, or "any clear opinion from any treating or examining physician describing [plaintiff's] functional limitations." Dkt. 16, p. 3. Plaintiff does not identify ambiguous evidence or an inadequacy in the record that prevented the ALJ from properly evaluating the evidence. The ALJ concluded that plaintiff's "mental health problems and headaches are not documented by acceptable clinical or laboratory findings sufficient to establish

the presence of any medically determinable impairments." AR 21. Plaintiff does not challenge this finding.

Plaintiff testified that she did not obtain mental-health treatment because her insurance did not cover it. *See* AR 469. Inability to afford treatment and lack of insurance are valid reasons for not seeking greater treatment. *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017). Although the ALJ noted that plaintiff never received treatment for her mental health, the ALJ did not rely on this finding to conclude that plaintiff had not proved mental-health impairments. AR 21. Rather, as noted above, the ALJ found that the record does not contain medically acceptable findings that would establish the presence of those impairments. *Id.* (citing 20 C.F.R. § 404.1508; SSR 96-3p). The record supports that finding.

B. <u>Medical Evidence</u>

Next, plaintiff contends generally that the ALJ "failed to properly evaluate the medical evidence." Dkt. 16, p. 4. Plaintiff summarizes select items of evidence, *id.* at 4-9, and identifies one potential source of error in the ALJ's discussion. The Court will not address issues on which plaintiff's opening brief fails to present specific, cogent arguments for consideration. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

Plaintiff argues that ALJ erred in assigning "[s]ignificant weight" to the medical opinion of Robert C. Thompson, M.D., who testified at the second ALJ hearing. *See* AR 29, 449-66. Plaintiff challenges Dr. Thompson's testimony that plaintiff's fibromyalgia diagnosis is not "supported in the evidence by any recorded rheumatology exam or laboratory findings that I saw." Dkt. 16, p. 9; *see* AR 452. Plaintiff contends that "Dr. Thompson does not appear to have understood that [plaintiff] had been diagnosed with fibromyalgia, nor did he include in his opinion the limitations [plaintiff] described in her testimony that were reasonably related to fibromyalgia." Dkt. 16, p. 10.

Plaintiff asserts that Dr. Thompson "appears to have been unaware" that a treating physician, Frederick Jensen, M.D., "is a rheumatologist, and he diagnosed [plaintiff] with fibromyalgia." Dkt. 16, p. 9. Yet Dr. Thompson acknowledged plaintiff's fibromyalgia diagnosis—and Dr. Thompson's testimony appears to be a response to Dr. Jensen's treatment notes. *See* AR 452; *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion"). Accordingly, plaintiff's objections to the ALJ's reliance on Dr. Thompson's opinion are without merit.

Treatment notes by Dr. Jensen do not contradict Dr. Thompson's finding that the fibromyalgia diagnosis was not "supported in the evidence by any *recorded rheumatology exam or laboratory findings* that I saw." AR 452 (emphasis added); *see* AR 346, 348 (noting "moderate tenderness of the fibromyalgia tender points" but no count of tender points; and opining musculoskeletal symptoms are related to fibromyalgia). The Court defers to the ALJ's reasonable interpretations of the medical evidence. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

C.  Plaintiff's Testimony

Next, plaintiff contends that the ALJ erred in discounting her symptom testimony.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

ORDER AFFIRMING THE COMMISSIONER'S DECISION
TO DENY BENEFITS - 6

At the 2016 ALJ hearing, plaintiff testified about her back and hip issues, which cause pain and numbness in her legs. AR 467. She testified that she cannot grip and takes medications for fibromyalgia. AR 468-69. She stated that she does not receive psychiatric care due to limited insurance coverage. AR 469. She stated that she engaged in few daily activities. AR 470. Plaintiff gave similar testimony at the 2013 ALJ hearing. AR 492-514. She also testified about her broken bones and sprains, AR 495-98, and that she thought she had anger problems, depression, a short attention span, and difficulty concentrating. AR 503.

The ALJ gave clear and convincing reasons to discount this testimony, and substantial evidence supports those reasons.

The ALJ reviewed the medical evidence. AR 24-26. He concluded that although the record substantiated plaintiff's conditions of "fibromyalgia, osteopenia with multiple fractures, and a fracture of the greater tuberosity of the left shoulder," it did not show functional limitations that would prevent her from working. AR 26. He concluded that plaintiff's "allegations are also less than credible." *Id.* The ALJ noted that the RFC would limit plaintiff "to sedentary work activity, with additional limitations to account for her alleged pain and fatigue symptoms," including limiting "her to only two hours of standing and/or walking to account for her pain and instability issues." AR 27. He found, however, that "the medical evidence does not support the degree of limitation alleged by the claimant." *Id.*

The ALJ made several findings in support of these conclusions.

He found that plaintiff's "fibromyalgia was responsive to tramadol." AR 27. Dr. Hurley observed in September 2012 that plaintiff "has diffuse myalgias" and "difficulties standing/walking," while being treated with tramadol; he opined that plaintiff could stand or walk for up to two hours per day. AR 338, 344. In May 2013, Dr. Jensen found a probable

diagnosis of fibromyalgia after finding "moderate tenderness of the fibromyalgia tender points." AR 346. At a follow-up visit in June 2013 (the month of plaintiff's date last insured, which she needs to prove disability on or before, AR 20; 20 C.F.R. §§ 404.131, 404.321), Dr. Jensen found that plaintiff "has fair control with tramadol and will continue the medication for the time being." AR 348. The next month, plaintiff's provider noted that, "Tramadol is helping with chronic pain issues with improved [quality of life] and no side effects," and continued the prescription for pain "as needed." AR 406-07. The record thus supports the ALJ's finding that tramadol was effective in treating plaintiff's fibromyalgia.

In addition, the ALJ found that "despite her testimony," plaintiff "healed from her various fractures and sprains." AR 27. The record supports this as well. *See* AR 312-13 (noting "chronic right ankle sprains and peroneal weakness of the right ankle," but plaintiff "ambulates without any assistive devices" and has "good range of motion"), 373 (noting some swelling but "[d]oing well" after right-ankle surgery).

The ALJ also found that plaintiff generally showed a normal range of motion in the lower extremities and no neurological deficits. AR 27. The record supports these findings, too, as the ALJ drew reasonable inferences from plaintiff's treatment notes. *See* AR 273 (noting full strength and range of motion, with pain, swelling), 302, 308, 312 (noting good range of motion though some weakness, laxity), 346, 378; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1159-60 (9th Cir. 2014) (ALJ may view record as whole and draw reasonable inferences).

The ALJ found that inconsistencies in plaintiff's statements about her ability to perform activities undermined their credibility. An ALJ may rely on a claimant's daily activities to support an adverse credibility finding in two scenarios: When those activities contradict the claimant's subjective complaints; or when those activities are transferable to a work setting and

the claimant spends a substantial part of the day on them. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ did not conclude that plaintiff's activities are transferable to a work setting. Rather, he concluded that her activities contradict her statements about what activities she is capable of. AR 27. This is a valid reason to discount a plaintiff's testimony. *See Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

The record supports that reasoning here: As the ALJ noted, plaintiff told Dr. Hutchins on March 15, 2012, that she could not exercise or sleep due to pain. AR 301. But she told PA-C Flick-Lewis on March 20, 2012, that she had "been doing some aggressive physical therapy since she has been discharged"—a date earlier than March 15—and that "she has been religious about doing her home exercise program." AR 312. The ALJ could reasonably find these statements inconsistent and draw an adverse inference regarding plaintiff's statements about her limitations.

Similarly, plaintiff stated in March 2013 that it was "wonderful to be able to walk around and have the trustworthy and stable ankle that does not give out on her," though she also reported having severe ankle pain and swelling at times. AR 378. In April 2013, however, she told Dr. Snow that "she is a huge gardener and caterer and tends to grow a big garden the size of Rhode Island, and feels her foot and ankle will hold up to that." AR 379. Again, the ALJ drew a reasonable inference of inconsistency between these statements about plaintiff's abilities.

It is the ALJ's responsibility to identify and resolve inconsistencies. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). The ALJ's finding was reasonable. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.

1999) (court may not engage in second-guessing where substantial evidence supports credibility finding). Finally, the ALJ assessed an RFC that included significant limitations to plaintiff's functioning, limiting her, in part, to sedentary work that requires no more than two hours of standing and walking in a day and does not require "more than a reduced pace for walking the distance of a city block." AR 22.

D. Lay Witness Evidence

In assessing plaintiff's RFC, the ALJ rejected a third-party function report from plaintiff's friend, Ms. DeFrance. AR 28. Ms. DeFrance reported that plaintiff had broken several bones in the past eight years; could not drive herself; had difficulty handling and gripping; had difficulty performing basic hygiene because of shoulder and hand troubles; could not concentrate; isolates; and become depressed due to her limitations. AR 215-19. She reported that plaintiff had fatigue and pain; that she fell often; that she remodeled her home to accommodate her physical limitations; and that she had numerous difficulties interacting. *Id.*

The ALJ gave Ms. DeFrance's statements "little weight," explaining that (1) "[s]he is not medically trained to make exacting observations instructive in evaluating the claimant's residual functional capacity"; (2) that Ms. DeFrance's "statements regarding the claimant's mental health problems are grossly inconsistent with the absence of mental health treatment in the record"; and (3) that plaintiff's "ability to garden, prepare meals, and perform household chores shows that she is able to sustain a higher degree of activity than reflected in Ms. DeFrance's statements." AR 28.

In assessing RFC, the ALJ must consider lay witness testimony regarding the claimant's symptoms, unless the ALJ expressly rejects a lay witness's testimony and gives reasons germane to that witness for doing so. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Friends and family members who observe the claimant's symptoms and activities "are competent to testify"

as to the claimant's condition. *Valentine v. Comm. of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff contends that the ALJ failed to give germane reasons to discount Ms. DeFrance's testimony. Plaintiff is correct that an ALJ cannot rely on a lay witness's lack of medical training to reject the witness's testimony, because medical expertise is irrelevant to the purposes of such testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Ms. DeFrance did not offer an assessment of plaintiff's RFC, as the ALJ seemed to imply; rather, her testimony, while it identified the areas that plaintiff struggles in, focused on personal observations of plaintiff's behavior. This is what lay testimony is intended for. *See* SSR 06-03p, at *2.

The ALJ's other reasons for discounting Ms. DeFrance's testimony were germane. The ALJ found that Ms. DeFrance's statements about plaintiff's mental health were "grossly inconsistent with the absence of mental health treatment in the record." AR 28. Plaintiff flatly asserts that this is incorrect, but she argues only that "the ALJ erred by failing to obtain a consultative psychological evaluation." Dkt. 16, p. 18. That argument is addressed above. An ALJ can validly consider a plaintiff's failure to seek treatment for a condition in discounting testimony about impairments from that condition. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). This was thus a germane, supported reason to reject Ms. DeFrance's testimony regarding plaintiff's mental-health limitations.

The ALJ also gave a germane reason in finding Ms. DeFrance's testimony inconsistent with plaintiff's demonstrated "ability to garden, prepare meals, and perform household chores." AR 28. An inconsistency between a claimant's activities and a lay's witness's statement is a

germane reason to discount the lay witness's testimony. *Carmickle v. Comm'r Soc. Sec. Admins.*, 533 F.3d 1155, 1163-64 (9th Cir. 2008); *Amor v. Berryhill*, 743 F. App'x 145, 147 (9th Cir. 2018). The ALJ could reasonably find plaintiff's statements about gardening and catering to be inconsistent with Ms. DeFrance's statements that plaintiff has extreme physical limitations—for instance, that she cannot perform basic hygiene, AR 215, that plaintiff's children do all the outdoor work, AR 217, and that plaintiff "moves slowly and with deliberate effort in anything she attempts to do," AR 217-18.

E. <u>RFC Assessment and Step-Five Finding</u>

Finally, plaintiff contends that the ALJ erred in not including all of plaintiff's limitations in her RFC and, as a result, in determining at step five that she can perform jobs that exist in significant numbers.

The RFC is the most the claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.1520(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000). An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987).

Here, as noted above, the ALJ found that plaintiff could perform a modified range of sedentary work. AR 22. The ALJ further found plaintiff could perform other jobs existing in significant numbers in the national economy based on that RFC at step five. AR 29-30. Plaintiff argues the ALJ erred in so finding, relying on the other alleged errors addressed above concerning the ALJ's consideration of the medical evidence, her testimony, and the function

report by her friend. But because the ALJ did not err, plaintiff has not shown that the ALJ erred in assessing her RFC or in finding her not disabled at step five.

## CONCLUSION

For the above reasons, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 28th day of May, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge